## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1293 | **DATE** | 6/14/2004 |
| **CASE TITLE** | Sandra Kiddy-Brown vs. Rod R. Blagojevich, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

State Official Defendants' Motion to Stay Discovery [24-1]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, the State Official Defendants' Motion to Stay Discovery pending appeal [24-1] is DENIED. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | number of notices | | Document Number |
|---|---|---|---|---|---|
| X | No notices required, advised in open court. | | | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | JUN 17 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 35 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| | slf(lc) | courtroom deputy's initials | date mailed notice | | |

U.S. DISTRICT COURT
CLERK
2004 JUN 16 AM 4:45

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUN 1 7 2004**

| | | |
|---|---|---|
| SANDRA KIDDY-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 1293 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| ROD R. BLAGOJEVICH, ROGER | ) | |
| WALKER, JR., JULIE CURRY, and | ) | |
| DEBBIE DENNING, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 28, 2004, Defendants Rod Blagojevich ("Blagojevich"), Roger Walker, Jr. ("Walker"),
Julie Curry ("Curry") and Debbie Denning ("Denning"), collectively ("Defendants" or "State
Official Defendants") filed a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P.
12(c), based upon Plaintiff Sandra Kiddy-Brown's ("Plaintiff" or "Kiddy-Brown") First
Amended Complaint ("Amended Complaint"). At a May 6, 2004 appearance before the Court by
the parties, the Court denied the State Official Defendants' motion for judgment on the
pleadings. Subsequently, the State Official Defendants moved for a stay of discovery pending
appeal of the denial of the motion for judgment on the pleadings. For the reasons set forth
below, the State Official Defendants' motion for a stay of discovery pending appeal is denied.

## I. Factual Background

Kiddy-Brown was employed by the Illinois Department of Corrections ("IDOC") for over nineteen years, until her termination in December 2003. (Am. Compl. ¶ 10). While employed by the IDOC, Kiddy-Brown occupied positions of Clerk, Residence Counselor, Center Supervisor, Coordinator and Assistant Warden. Id. In August 2001, Kiddy-Brown was promoted to the position of Warden at the Decatur Correctional Center. Id. All of Kiddy-Brown's promotions occurred during Republican administrations. Id. As Warden, Plaintiff acted under the specific direction of Assistant Deputy Director Diane Hurrelbrink ("Hurrelbrink"). Id. Hurrelbrink acted under the direction of Denning, who was Deputy Director of the IDOC. (Am. Compl. ¶ 11).

Kiddy-Brown was informed by her superiors of the duties and responsibilities that she had to execute as Warden. Plaintiff: (1) planned and directed operations, programs and activities; (2) monitored the facility to ensure effective operation; (3) evaluated programs and security; (4) interacted with the public regarding inmate care and custody; (5) directed, supervised, guided and trained staff; and (6) conducted routine inspection tours. (Am Compl. ¶ 14).

Plaintiff's Amended Complaint contains three counts against the State Official Defendants.[1] Count I alleges that Kiddy-Brown was removed from her Warden position at the Decatur Correctional Center because of her political affiliation with the previous Republican administration and her lack of Democratic political sponsorship. (Am. Compl. ¶ 23). Kiddy-Brown alleges that the State Official Defendants were aware of her political affiliations with the

---

[1] On May 20, 2004, Plaintiff moved to dismiss, without prejudice, Counts IV and V of her Amended Complaint, and on May 25, 2004, this Court granted her motion. Therefore, the Court will only discuss Counts I, II and III of Kiddy-Brown's First Amended Complaint.

Republican party, the State Officials discussed this matter, and that Plaintiff was informed that she was being terminated because of her affiliation with the Republican party, and lack of Democratic sponsorship. (Am. Compl. ¶ 24-27).

Count II of Plaintiff's Amended Complaint alleges that her First Amendment rights were violated when she was terminated from her position as Warden, in retaliation for her criticism of the State Official Defendants administration of the IDOC. (Am. Compl. ¶¶ 53-58). These criticisms include: (1) violations by State employees when filling employment positions within the IDOC; (2) the need to fill IDOC positions with qualified personnel; (3) the interference of labor in the process of filling IDOC employment positions; (4) the unwillingness of the State Official Defendants to staff IDOC facilities at appropriate levels; and (5) the safety and reorganization of IDOC facilities. Id. Kiddy-Brown alleges that the State Official Defendants were aware of her activities in furtherance of public policy, and that she was terminated by the State Officials as a result of her activities. (Am. Compl. ¶¶ 70-71).

Finally, in Count III of her Amended Complaint, Kiddy-Brown alleges that her due process rights were violated after the State Official Defendants removed her from her Warden position, as she alleges that the Defendants had no reasonable cause and failed to provide Plaintiff with an opportunity to be heard. (Am. Compl. ¶ 82). Further, Plaintiff alleges that she had a property interest in continued employment, based on various promises made by Governor Blagojevich. (Am. Compl ¶ 80). Plaintiff contends that Governor Blagojevich promised her, and others employed by the State of Illinois, that he was not looking to fire certain state employees solely because they were hired during Republican administrations. (Am. Compl. ¶ 78).

## II. Legal Standard for Motion for Judgment on the Pleadings

When ruling on a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a district court accepts the allegations pleaded in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th Cir. 1998). "A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under [Fed. R. Civ. P.] 12(b): the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief." Flenner v. Sheahan, 107 F.3d 459, 461 (7th Cir. 1997) (citing Frey v. Bank One, 91 F.3d 45, 46 (7th Cir. 1996)).

## III. Analysis of Plaintiff's Claims

### A. Count I

The State Official Defendants contend that they are entitled to judgment as a matter of law on Count I of Kiddy-Brown's Amended Complaint, because political affiliation is an appropriate requirement for the Warden position that Plaintiff held. Generally, in regards to the hiring, firing, recalling, transferring or promotion of low-level, non-confidential, non-policymaking government employees, government officials may not consider the political affiliation of the employee in question. See Elrod v. Burns, 427 U.S. 347, 372 (1976); see also Rutan v. Republican Party of Illinois, 497 U.S. 62, 74(1990). However, if political affiliation is an "appropriate requirement" for a government employment position, government officials may make employment decisions based on the employee's political affiliation. Branti v. Finkel, 445 U.S. 507, 518 (1980). Government officials may make employment decisions based upon

political affiliation whenever "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518.

In the Seventh Circuit, courts must determine "whether the position [that is] held by the individual authorizes, either directly or indirectly, meaningful input into government decisions on issues where there is no room for principled disagreement on goals or their implementation." Nekolny v. Painter, 653 F.2d 1164, 1170 (7th Cir. 1981). However, the Seventh Circuit has rejected the notion that labels or job titles are relevant to the inquiry as to whether these "patronage dismissals" are permissible. Flenner v. Sheahan, 107 F.3d 459, 464 (7th Cir. 1997) (internal citations omitted). Further, the Seventh Circuit has cautioned that generalizations should not be made as to the duties or responsibilities of a particular position. Meeks v. Grimes, 779 F.2d 417, 420 (7th Cir. 1985).

As the State Official Defendants note in their brief in support of their motion for judgment on the pleadings, the Seventh Circuit has yet to determine whether political affiliation is an appropriate requirement for the position of Warden. However, Defendants contend, based upon other Seventh Circuit decisions where the plaintiffs were required to execute job duties that were similar to Kiddy-Brown's job responsibilities as a Warden, the Court should find that as a matter of law, political affiliation is an appropriate requirement for the Warden position. See e.g., Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 757-58 (7th Cir. 2002) (affirming the decision granting the Illinois Department of Professional Regulation's motion to dismiss the Chief Administrative Law Judge's complaint alleging that he was improperly demoted and transferred for political reasons, when the official position description for the Administrative Law Judge included, "directing subordinate staff, formulating procedures for the

-5-

hearing programs, advising peer review committees, developing hearing program goals, and directing and implementing a program budget."). Although the official description position for Warden includes similar language, this Court declines to rule, as a matter of law, that political affiliation is an appropriate requirement for the position of Warden. As noted, the Seventh Circuit has cautioned against making generalizations about job descriptions or responsibilities. Meeks, 779 F.2d at 420. Consequently, the fact that the Seventh Circuit held that a government employee with a similar job description as Plaintiff's was not shielded from patronage dismissal does not lead to the conclusion that political affiliation is an appropriate requirement for the Warden position. At the pleadings stage of the Parties' proceedings, it cannot be determined whether a Warden is the type of policy-making employee where political affiliation is an appropriate requirement. Therefore, the Court cannot conclude, as a matter of law, that political affiliation is an appropriate requirement for the Warden position.

### B. Count II

In Count II of her First Amended Complaint, Kiddy-Brown alleges that her constitutional rights were violated because she was terminated from her position after she spoke out on certain matters of public concern. The Defendants argue that Plaintiff's claim is barred as a mater of law, because plaintiff was a policymaking employee who publicly criticized her superiors.

In order to establish a prima facie case of retaliation in violation of the First Amendment, a plaintiff must show that her speech is protected by the First Amendment, and she must demonstrate that her speech was a substantial or motivating factor in the decision to terminate her. See e.g., Ryan v. Illinois Dept. of Children and Family Services., 185 F.3d 751, 759 (7th Cir. 1999). The Supreme Court has determined that courts must balance the government

-6-

employee's right of expression as a private individual and the need for the government to conduct its affairs effectively. Pickering v. Board of Education., 391 U.S. 563, 568 (1968). Thus, in order to be protected by the First Amendment: "(1) the speech by a government employee must be on a matter of public concern, and (2) the employee's interest in expressing herself must not be outweighed by any injury the speech could cause to the interest of the state, as employer, in promoting efficient and effective public service." Kuhans v. School District 110, 123 F.3d 1010, 1014 (7th Cir. 1997) (internal citations omitted).

The Seventh Circuit has held that this balancing test does not apply to speech by an individual in a policymaking position. Vargas-Harrison v. Racine Unified Sch. Dist., 272 F.3d 964, 970-71 (7th Cir. 2001). A policymaking employee can be terminated if the employee "has engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated positions." Id. at 971. Defendants ask this Court to find, as a matter of law, that Kiddy-Brown is not subject to First Amendment protection because she was a policymaking employee. However, as the Court noted in Section III.A of this Opinion, the Court cannot find, as a matter of law, that a Warden is a policymaking employee. Therefore, construing all allegations in the light most favorable to the Plaintiff, Kiddy-Brown stated a claim upon which relief can be granted in Count II of her Amended Complaint

### C. Count III

As previously noted, in Count III of her Amended Complaint, Kiddy-Brown contends that her due process rights were violated when she was removed from her Warden position without any reasonable cause and an opportunity to be heard. (Am. Compl. ¶ 82). Kiddy-Brown alleges that she had a property interest in continued employment with the IDOC, based upon promises

that Governor Blagojevich made, stating that he would not fire men or women solely because they were hired during Republican administrations. (Am. Compl. ¶¶ 78, 80).

"Procedural due process claims require a two-step analysis. The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982)). In the employment context, a property interest can be created in one of two ways: (1) "by an independent source such as state law securing certain benefits," or (2) "by a clearly implied promise of continued employment." Shlay v. Montgomery, 802 F.2d 918, 921 (7th Cir. 1986) (quoting Munson v. Friske, 754 F.2d 683, 692 (7th Cir. 1985)). The plaintiff must establish that her termination "amounted to a deprivation of property under Illinois law." Keppler v. Hinsdale Tp. High School Dist. 86, 715 F.Supp. 862, 870 (N.D. Ill. 1989).

The State Official Defendants contend that they are entitled to judgment on the pleadings because as a matter of law, Kiddy-Brown had no protected property interest in continued employment. The Defendants contend: (1) there is no independent federal law source that conferred any protection from Plaintiff's termination; and (2) Plaintiff had no state law contractual right to continued employment as a Warden. Defendants focus their arguments on the second element, because in her Amended Complaint, Kiddy-Brown alleges that Governor Blagojevich made a contractual promise that she would not lose her job due to the change in administrations. Therefore, the Court will analyze whether Kiddy-Brown's allegation that Governor Blagojevich made a contractual promise concerning continued future employment states a claim upon which relief can be granted.

The State Official Defendants contend there are four reasons why Governor Blagojevich's promises to Kiddy-Brown are insufficient for a due process claim. The State Officials contend Governor Blagojevich: (1) lacked the necessary authority to bind the IDOC to an employment contract with Kiddy-Brown; (2) made oral, informal statements that were insufficiently clear and definite to constitute an offer of continued employment; (3) failed to receive any consideration from the Plaintiff in return for his offer of continued employment; and (4) entered into an oral contract that is unenforceable under the statute of frauds.

Judgment on the pleadings in favor of the State Official Defendants is inappropriate for several reasons. Most significant is that the Defendants' arguments require that the Court go beyond the pleadings to analyze the promises that were made to Kiddy-Brown. For example, the Defendants' arguments contend that Governor Blagojevich's oral, informal statements were insufficiently clear to constitute an offer of continued employment. However, Kiddy-Brown's Amended Complaint states in part,

> In August of 2003, Defendant Blagojevich promised Kiddy-Brown and others employed by the State of Illinois that he was not looking to purge state government of different men and women who were hired during Republican administrations. Defendant Blagojevich also promised that if men and women working for the State of Illinois were satisfactorily performing necessary jobs, they would not be terminated by his administration.

See Am. Comp. ¶ 78.

Defendants' arguments assume Blagojevich made an oral promise that guaranteed employment until the end of Blagojevich's administrations. However, the State Official Defendants premise those arguments on facts beyond what Plaintiff alleges in her Complaint. At this point, all of the details of Blagojevich's promise are unknown, and when the facts are

right forming the basis of the cause of action. Upton v. Thompson, 930 F.2d 1209, 1212 (7th Cir. 1991) (citing Rakovich v. Wade, 850 F.2d 1180, 1205 (7th Cir. 1988)).

The State Official Defendants contend that Kiddy-Brown cannot meet her burden of finding closely analogous cases on Counts I and II because there are no cases in the Seventh Circuit involving the Warden position. Defendants argue that the Seventh Circuit has recognized that in a case where the Branti test is at issue, in order to defeat qualified immunity and obtain damages, the plaintiff has the burden of finding a "nearly identical" case, involving a nearly identical position, that rules against the government official. Pounds v. Griepenstroh, 970 F.2d 338, 341 (7th Cir. 1992).

In the Seventh Circuit case Flenner v. Sheahan, 107 F.3d 459 (7th Cir. 1997), two former Cook County correctional officers brought suit against Michael F. Sheahan, the Sheriff of Cook County, alleging that discharge proceedings were initiated against them due to their affiliation with the Cook County Republican Party, thereby violating the correctional officers' First and Fourteenth Amendments rights to be free from patronage dismissal. Id. at 460. Sheriff Sheahan raised the defense of qualified immunity, and moved for judgment on the pleadings. Id. The district court granted Sheriff Sheahan's motion for judgment on the pleadings, finding that the law concerning patronage dismissals of correctional officers was not clearly established in 1993, the time of the alleged constitutional violation. Id. However, the Seventh Circuit reversed this ruling. Sheriff Sheahan argued that he was entitled to qualified immunity because it was not sufficiently established in January 1993 that the dismissal of Cook County correctional officers based on their political affiliation was a violation of the officer's First Amendment rights to freedom of association. The Seventh Circuit noted that their cases that have addressed the issue

-11-

construed in the light most favorable to Kiddy-Brown, her Complaint states a claim for relief, as there are situations in which a government official can make a promise regarding employment that results in a binding contract. See e.g., Gorman v. Robinson, 977 F.2d 350, 356-57 (7th Cir. 1992) ("when government gives its employees assurances of continued employment a constitutionally protected property interest arises." Id. (citing Hannon v. Turnage, 892 F.2d 653, 656 (7th Cir. 1990)); see also Kastel v. Winnetka Bd. of Educ., Dist. 36, 946 F.Supp. 1329,1340 (holding that Plaintiff's allegations of breach of contract in employment context were sufficient to withstand a motion to dismiss when various officials of the Board promised her that she would be retained as a part-time employee following her retirement). Therefore, the State Official Defendants' motion for judgment on the pleadings as to Count III is denied.

### C. State Officials' Arguments for Qualified Immunity

The State Official Defendants contend that even if the Court finds that Counts I through III of Kiddy-Brown's Amended Complaint state claims upon which relief can be granted, the Defendants are entitled to qualified immunity on all three counts, because Kiddy-Brown cannot point to cases involving closely analogous actions. "Qualified immunity shields from liability government officials who are performing discretionary functions in the course of duty to the extent that their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Spiegel v. Cortese, 196 F.3d 717,723 (7th Cir. 1999) (citing Eversole v. Steele, 59 F.3d 710, 717 (7th Cir. 1995)). The Court must consider "(1) whether the plaintiff has asserted a violation of a federal constitutional right, and (2) whether the constitutional standards implicated were clearly established at the time in question." Id. It is the plaintiff's burden to cite closely analogous cases which clearly and consistently recognize the

-10-

of patronage dismissal make clear that an employee who has little autonomy or discretion in performing his duties is not subject to patronage dismissal. Id. at 463. Additionally, the Flenner court emphasized the Seventh Circuit's decision in Meeks v. Grimes, 779 F.2d 417 (7th Cir. 1985), which cautioned that generalizations should not be made concerning the functions and duties of a particular position. Flenner, 107 F.3d at 463 (citing, Meeks, 779 F.2d 417). Finally, the Flenner court emphasized that the issue of qualified immunity was before the court on a motion for judgment on the pleadings, and that all facts must be viewed in the light most favorable to the plaintiff. Flenner, 107 F.3d at 465. Because the correctional officers in Flenner alleged that they received daily instructions from supervisors as to the handling, care and supervision of prisoners to whom they were assigned, the court found that the correctional officers were in that category of workers "who are clearly and completely protected from patronage firings." Id. (citing Pounds, 970 F.2d at 341)).

Therefore, applying the Flenner standard, on a motion for judgment on the pleadings, this Court must construe the facts in the light most favorable to Kiddy-Brown. In her Amended Complaint, Kiddy-Brown alleges that she had no: (1) close contact with any IDOC policymakers (Am. Compl. ¶ 29); (2) autonomous or discretionary authority (Am. Compl. ¶ 30); or (3) participation in the determination of policy which fixed objectives or stated principles toward operating objectives or toward the conduct of one or more administrative units immediately subordinate to Governor Blagojevich, Walker or Curry. (Am. Compl. ¶ 31). Based upon the allegations in her Complaint which describe her duties as Warden of the Decatur Correctional Center, Plaintiff would be in that class of employees that is protected from patronage firings, and the law of the Seventh Circuit was clear on the protection of those employees at the time Kiddy-

-12-

Brown filed her Complaint. Therefore, at this stage of the parties' proceedings, qualified immunity is not a bar to Counts II and III of Plaintiff's Amended Complaint.

Additionally, the State Official Defendants contend that they are entitled to qualified immunity on Count III because there are no cases finding a due process violation in closely analogous situations. However, this argument misconstrues the appropriate inquiry. The Supreme Court has rejected the notion that there is no entitlement to public employee, and consequently, political patronage does not infringe an employee's constitutional rights. See Vickery v. Jones, 856 F.Supp. 1313, 1321 (S.D. Ill. 1994). "Even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." Id. (quoting Elrod, 427 U.S. at 360-61). Therefore, it would be a due process violation to terminate Kiddy-Brown for reasons of political patronage, if she is the type of employee for which patronage dismissals are forbidden. Clearly established law maintains that Kiddy-Brown would have a constitutional right to continued employment in the face of an inappropriate patronage dismissal. Consequently, construing all allegations in the light most favorable to Kiddy-Brown, the State Official Defendants are not entitled to qualified immunity on Count III of Kiddy-Brown's Amended Complaint.

## IV. Conclusion

For the foregoing reasons, the State Official Defendants' motion for a stay of discovery pending appeal is denied.

Enter:

David H. Coar
United States District Judge

Dated: **June 14, 2004**